# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 16-24793-CIV-COOKE/TORRES

PEOPLE FOR THE ETHICAL TREATMENT OF
ANIMALS, INC., ANIMAL LEGAL DEFENSE
FUND, ORCA NETWORK, and HOWARD
GARRETT

                  Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
AGRICULTURE and ELIZABETH
GOLDENTYER, in her official capacity as Director
of Animal Welfare Operations for the Eastern
Region of the United States Department of
Agriculture Animal and Plant Health Inspection
Service,

                  Defendants,

FESTIVAL FUN PARKS, LLC d/b/a MIAMI
SEAQUARIUM,

                  Defendant-Intervenor.

_____/

### DEFENDANT-INTERVENOR FESTIVAL FUN PARKS, LLC
### D/B/A MIAMI SEAQUARIUM'S MOTION TO DISMISS AND INCORPORATED
### MEMORANDUM OF LAW

      Defendant-Intervenor Festival Fun Parks, LLC d/b/a Miami Seaquarium ("FFP")
respectfully moves to dismiss the Complaint filed by Plaintiffs People for the Ethical Treatment
of Animals, Inc. ("PETA"), Animal Legal Defense Fund ("ALDF"), Orca Network, and Howard
Garrett (collectively "Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(6).  In support of this Motion,
FFP submits the following Memorandum of Law.

## I.  INTRODUCTION AND SUMMARY OF FFP'S POSITION.

This case (Plaintiffs' third lawsuit challenging the care given the orca Lolita a/k/a Toki ("Toki") at the Miami Seaquarium Park) is a prime candidate for resolution on a motion to dismiss because the core issue to be resolved by this Court is one of statutory and regulatory interpretation.  Simply stated, Plaintiffs challenge certain discretionary licensure decisions made by the Animal & Plant Health Inspection Service of the United States Department of Agriculture ("APHIS") in connection with the continuation of licensure of the Miami Seaquarium (the "Seaquarium" or the "Park") following a July 2014 merger transaction in which long-time Park owner, Marine Exhibition Corp. ("MEC"), merged into FFP (the "MEC/FFP Merger").  At the time of this merger, MEC and FFP held their own separate licenses (hereinafter, the "MEC License" and the "FFP License") to exhibit wildlife to the public under the Animal Welfare Act ("AWA"), 7 U.S.C. §§ 2131-2159.  Plaintiffs assert that APHIS's decisions not to take enforcement regarding licensure following the MEC/FFP Merger and then add the Park as an additional site under FFP's pre-existing FFP License, despite the Seaquarium's alleged non-compliance with relevant AWA standards ("AWA Standards"), "violat[ed] the plain language of the AWA regulations and in a manner that [was] arbitrary, capricious, an abuse of discretion, and not in accordance with the law, or otherwise in violation of the [Administrative Procedure Act], 5 U.S.C. § 706(2)."  Cmplt., ¶¶ 67-69.  Plaintiffs seek a declaration to this effect and ask this Court to set aside as allegedly unlawful APHIS's decision in June 2015 to place the Seaquarium as an additional site under the pre-existing FFP License and then terminate the no-longer needed MEC License.  *Id.*, ¶¶ 52, 63, 69.

As explained in more detail below, Plaintiffs attack APHIS's licensing decisions on two grounds, both of which lack merit.  First, Plaintiffs mischaracterize the legal effect the MEC/FFP Merger.  Although the merger was effectively a consolidation of the entities, through which MEC was subsumed into FFP and is deemed to continue its existence as part of FFP, Plaintiffs argue that the merger transaction resulted in a "sale" and change in ownership of the former MEC License that rendered that license null and void, allegedly requiring the issuance by APHIS of a new license that could be challenged by Plaintiffs.  *Id.*, ¶¶ 53-55.  In making this assertion, Plaintiffs not only misconstrue the regulation they cite, 9 C.F.R. § 2.5(d), but also ignore well-established rules of statutory construction and Florida law regarding the legal impact of a merger

(as opposed to a sale of assets).  Indeed, as explained below, the controlling regulation is not 9 C.F.R. § 2.5(d), but 9 C.F.R. § 2.8 which, unlike 9 C.F.R. § 2.5(d), imposes an after-the-fact notification requirement for changes of control like the MEC/FFP Merger that do not involve any "transfer" of a pre-existing license.

Second, relying upon a statute that applies solely to the issuance of **new** licenses, 7 U.S.C. § 2133, Plaintiffs assert that APHIS failed to ensure that the Seaquarium complied with various AWA Standards governing the Seaquarium's care of Toki, the orca housed at the Seaquarium, before adding the Seaquarium as a second site to the pre-existing FFP License, even though Plaintiffs acknowledge APHIS conducted an inspection before taking this action.  *See* Cmplt., ¶¶ 56, 62-64.  Under an important decision in prior litigation among the parties, described in detail below, Plaintiffs are not entitled to judicial review of APHIS's decisions as to whether a licensee is in compliance with the AWA Standards unless APHIS was legally obligated to find compliance before taking the licensing action in question.  Because APHIS did not issue a new license in moving the Seaquarium from the MEC License to the FFP License following the MEC/FFP Merger, APHIS was not legally obligated to find compliance before taking that license continuation/modification action, and judicial review of the favorable results of the inspection APHIS voluntarily chose to conduct is therefore unavailable.

For these reasons, and for the reasons set forth more fully below, the Complaint should be dismissed because the Plaintiffs have failed to state a claim upon which relief can be granted.

## II.   RULINGS IN PRIOR CASES INVOLVING RELATED FACTUAL AND LEGAL ISSUES.

As noted above, this case is the third lawsuit filed by Plaintiffs challenging the care given by the Seaquarium to Toki, specifically insofar as it concerns Toki's pool size, shade conditions and companionship.  This third lawsuit and the first lawsuit both involve challenges to APHIS's licensing decisions relating to Toki.  The second lawsuit also alleged that the Seaquarium was purportedly violating certain AWA standards with respect to Toki's care, but in that case Plaintiffs made their allegations in the context of an Endangered Species Act ("ESA") claim.  As noted below, Plaintiffs lost the first two lawsuits.  Because the reasoning employed by both the courts in connection with these prior cases is relevant to a proper disposition of this case, these decisions will be summarized below.

**A. The First AWA Case Regarding MEC's License Renewal Sets the Applicable Standard.**

In 2012, Plaintiffs sought judicial review under the Administrative Procedure Act ("APA") of APHIS's April 2012 decision to grant an annual license renewal to MEC for the Seaquarium, claiming that the Seaquarium's care for Toki violated the AWA Standards adopted by APHIS to govern marine mammal care. *See Animal Legal Defense Fund v. U.S. Dep't of Agri.*, 789 F.3d 1206, 1211, 1224, n.13 (11th Cir. 2015) ("*ALDF*" or "First AWA Case"); *see also* 9 C.F.R. §§ 3.101-3.110 (AWA Standards for marine mammals including orcas).  MEC, as the license holder at the time, intervened in the First AWA Case, just as its successor-by-merger, FFP, has now intervened in this case. *See ALDF*, 789 F.3d at 1213.

In the First AWA Case, Judge Lenard granted summary judgment in favor of APHIS holding that the AWA did not require APHIS to ensure that the then-licensee, MEC, was complying with relevant AWA Standards before renewing the MEC License. *Animal Legal Defense Fund v. U.S. Dep't of Agric.*, Case No. 13-20076, 2014 WL 11444100 at **3, 6, and 8 (S.D. Fla. 2014) (noting that case presented a pure question issue of law, so there was no need for the parties to file statements of material fact).[1]  In support of her ruling, Judge Lenard surveyed federal licensing statutes from across the breadth of the U.S. Code and concluded that, when Congress desired to impose statutory conditions for a license renewal, it said so expressly. *Id.* at *5.  Judge Lenard then further concluded that because the AWA neither mentions license renewals nor limits the terms of licenses, Plaintiffs failed to identify any provision of law mandating that APHIS ensure the Seaquarium's compliance with the AWA Standards before renewing the MEC License. *Id.* at **6-8.

In affirming Judge Lenard's decision, the Eleventh Circuit expressly "assume[d], without deciding, that [the] USDA renewed [MEC]'s license despite knowing there was evidence that the [Seaquarium] was violating several AWA standards." *ALDF*, 789 F.3d at 1209, n.2.  The Eleventh Circuit then held that Plaintiffs failed to state a viable cause of action against the USDA

---

[1]   Judge Lenard explained that she granted APHIS's motion to dismiss or in the alternative for summary judgment under Rule 56, rather than under Rule 12, because APHIS had already filed an unsuccessful motion to dismiss for improper venue before the transfer of the case from the Northern District of California to the Southern District of Florida. *See* 2014 WL 11444100 at **2-3. *See also* Fed. R. Civ. P. 12(g)(2).

4

(even with the benefit of that assumption) because: (1) the AWA did not require APHIS to ensure compliance with the AWA Standards before renewing, as opposed to initially issuing, a license; and (2) the AWA instead provided an enforcement process to terminate existing licensees for violations of the AWA Standards and other provisions through administrative complaints filed by APHIS with an Administrative Law Judge.  *Id.* at 1215-1225 (reviewing 7 U.S.C. §§ 2133, 2134, 2149).   The Eleventh Circuit also concluded that judicial review of APHIS's findings of AWA Standards compliance by the Seaquarium was unavailable to Plaintiffs because APHIS had ***voluntarily chosen*** to review and confirm the Seaquarium's compliance before granting the renewal (over Plaintiffs' objections), even though APHIS was ***not obligated*** by law to do so.   *See ALDF*, 789 F.3d at 1224, n.13; *see also id.* at 1211 (describing APHIS's letter to Plaintiffs explaining the basis of the license renewal in that case).

With respect to Plaintiffs' request for judicial review of these compliance fact findings, in particular, the Eleventh Circuit held that Plaintiffs were not entitled to such judicial review because, even if APHIS had renewed the license with full knowledge of violations of the AWA Standards, such action would not have violated the AWA.  *Id.*   More specifically, the Eleventh Circuit stated: "Directing the district court to scrutinize the administrative record to evaluate whether USDA complied with a ***fictitious legal requirement*** [that APHIS ensure compliance with the AWA Standards before renewal] would be the height of pointlessness."  *Id.* (emphasis added).   Likewise, with respect to APHIS's discretionary power to pursue APA enforcement proceedings, the Eleventh Circuit explained that, while APHIS was statutorily empowered to bring enforcement actions against the holders of existing licenses for violations of AWA Standards pursuant to 7 U.S.C. § 2149, APHIS's decision to file or forego an enforcement action constituted a judicially unreviewable exercise of enforcement discretion.  *Id.* 789 F.3d at 1214, n.7.  Thus, the Eleventh Circuit concluded:

> As long as USDA refuses to initiate a discretionary enforcement proceeding, the remedy ALDF and [Toki's] legion of supporters seek ***lies not in the federal courts, but in the halls of Congress***.  Our democratically elected leaders alone have the authority to limit USDA's license-renewal discretion in this matter and to demand annual substantive compliance with animal welfare standards for renewals.

*Id.* at 1225 (emphasis supplied).

**B. The Second Lawsuit Resulted in the Conclusion that the Seaquarium's Care for Toki Did Not Violate the Endangered Species Act.**

Undeterred by the Eleventh Circuit's opinion in the First AWA Case, the same group of Plaintiffs (minus two individual plaintiffs) filed a second lawsuit in July 2015 attempting to recast their claims of alleged violations of the same AWA Standards at issue in the First AWA Case as violations of the "take" provisions of the Endangered Species Act ("ESA"), 16 U.S.C. § 1538.  Following extensive discovery into the merits of Plaintiffs' claims of alleged AWA Standards violations, Judge Ungaro granted a summary judgment in favor of the Seaquarium on the merits, concluding that the Seaquarium's care for Toki did not constitute "harm" or "harass[ment]" of Toki, as defined by the ESA, and thus did not constitute "take" of Toki.  *See People for the Ethical Treatment of Animals, et al. v. Festival Fun Parks, LLC d/b/a Miami Seaquarium*, Case No. 1:15-cv-22692-UU (June 1, 2015, Order at 27-38 (ECF Doc. 203)) (the "ESA Case").  Like Judge Lenard, Judge Ungaro applied well-established rules of statutory construction to Plaintiffs' claims and concluded, just as Judge Lenard and the Eleventh Circuit previously concluded, that Plaintiffs were attempting to seek relief to which they were not entitled in Federal Court.  *Id.* at 39.[2]  Notably, Judge Ungaro ended her opinion with a stern warning to Plaintiffs that closely paralleled the warning previously given to these same Plaintiffs by the Eleventh Circuit—their remedy, if any, was to seek a change in the controlling legislation, not to file a lawsuit.  *Id.*

**C. The Present Case and Plaintiffs' Continued Refusal to Heed the Advice of the Federal Courts as to their Appropriate Remedy, if Any.**

Unwilling to heed the advice given by the courts in these prior decisions, the same Plaintiffs who filed the First AWA Case and the ESA Case have now filed the present lawsuit challenging APHIS's decision to continue the AWA licensure of the Seaquarium following the MEC/FFP Merger.  Once again, Plaintiffs rely upon the same assertions of alleged violations of AWA Standards regarding Toki's pool size, shade conditions and companionship that were raised and resolved by the Court in the ESA Case.  Moreover, as discussed in detail below,

---

[2]  Plaintiffs' appeal of Judge Ungaro's decision is pending and the standing and merits issues are being addressed in that appeal.  *See People for the Ethical Treatment of Animals, et al., v. Miami Seaquarium, et al.*, Case No. 16-14814-B, U.S. Court of Appeals for the Eleventh Circuit.

Plaintiffs draw inappropriate legal conclusions regarding APHIS's licensing obligations and responsibilities, just as they did in the First AWA Case. And, once again, the relief sought by Plaintiffs in this lawsuit is not relief to which they are legally entitled and their remedy, if any, is legislation, not litigation.

## III. CORE INDISPUTABLE FACTS REGARDING THE CORPORATE TRANSACTIONS AT ISSUE AND THE RELATED LICENSING DECISIONS MADE BY APHIS.

The following facts are drawn from the Complaint and are supplemented by a few indisputable public records that may be judicially noticed by this Court. *See U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015).

### A. The MEC License.

APHIS issued a license to MEC to exhibit wildlife to the public at the Miami Seaquarium in 1978. APHIS then annually renewed this MEC License each year until cancelling it on July 7, 2015. *See* Cmplt. ¶¶ 31, 52.

### B. The MEC/FFP Merger Transaction.

On July 1, 2014, Wometco Enterprises, Inc. ("Wometco") sold 100% of its shares in MEC to FFP and FFP acquired control of MEC. *Id.,* ¶ 59. Through MEC, FFP likewise gained control over the Seaquarium. On July 3, 2014, FFP caused MEC to merge into FFP, with FFP being the surviving entity to the merger. *See id.* As the laws of Florida (MEC's state of incorporation) and Delaware (FFP's state of organization) provide, the surviving merged entity, FFP, stepped into the shoes of the pre-existing licensee, MEC, and assumed all of MEC's rights and obligations, including its regulatory obligations under the AWA, immediately upon the consummation of the MEC/FFP Merger.[3]

---

[3]   *See* Fla. Stat. § 607.1107; 6 Del. Code § 18-209(g). Florida law governs the merger of a Florida corporation into a corporation organized under the laws of another State, unless the laws of the other State depart in some significant way from Florida law. Fla. Stat. § 607.1107(4). Delaware law does not appear to depart in any significant way from the Florida law cited in this Motion. The judicially noticeable Articles of Merger filed with the Florida Secretary of State confirm MEC's organization in Florida and FFP's organization in Delaware and provide terms of the Merger. A copy is supplied as Exhibit 4 to this Motion. *See Osheroff,* 776 F.3d at 811 (such public records may be judicially noticed and considered in deciding a Rule 12(b)(6) motion).

### C.  FFP's Timely Notification to APHIS of the Merger Transactions.

On July 10, 2014, as required by APHIS's licensing rules, 9 C.F.R. § 2.8, FFP timely sent a letter to APHIS notifying it of the July 1 and July 3, 2014 transactions, and providing details regarding these transactions, including the change in corporate control resulting from the merger (the "Notice").  *See* Cmplt. ¶ 59.  A copy of the Notice is attached as Exhibit 1 to this Motion.[4]

In their Complaint, Plaintiffs have not alleged any material change in the on-site personnel working at the Seaquarium, including Toki's caretakers, following the merger.  Cmplt. ¶¶ 57-67.  The Notice confirms that there were no such changes of personnel.  *See* Exhibit 1 hereto.

### D. The FFP License.

As noted above, at the time of the MEC/FFP Merger, FFP already held its own separate AWA license issued in April 2014 to exhibit animals at its Story Land Park in New Hampshire. Cmplt. ¶¶ 60-61.  This FFP license was renewed on April 22, 2015.  *Id.,* ¶ 62.  On June 11, 2015, APHIS added the Seaquarium as a second site on the FFP License.  *Id.,* ¶ 62; *see also* Exhibit 2A-2B attached to this Motion (records from the APHIS public online licensing database providing information on the FFP License).[5]

### E. PETA's Pre-Merger Complaints to APHIS About the Merger Transaction's Impact on the Seaquarium's Licensing Status and APHIS's Subsequent Licensing Decisions.

On May 14, 2014, approximately two months before FFP sent its Notice to APHIS, Plaintiff PETA sent a letter to APHIS arguing that the Seaquarium would allegedly be operating illegally without a license once the then-impending merger closed ("Protest Letter").  *See* Cmplt.

---

[4]  Because the Complaint describes the Notice and the transactions described to APHIS in the Notice are central to this lawsuit, this Court may consider the Notice in deciding this Motion. *See Osheroff,* 776 F.3d at 811; *see also Brooks v. Blue Cross and Blue Shield of Florida, Inc*., 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal….").

[5]  These public licensing records clarify information summarized in the Complaint, are judicially noticeable, and may be considered in deciding a Rule 12(b)(6) motion. *See Osheroff,* 776 F.3d at 811; *Massachusetts v. Westco*, 431 U.S. 322, 323, n.2 (1977) (government licensing records are judicially noticeable under Fed. R. Evid. 201).

¶ 58.  In its Protest Letter, PETA cited an APHIS rule that prohibits transfers of a license from person to person, but does not define "transfer" or address mergers of two licensees.  *See id.,* citing 9 C.F.R. § 2.5(d).

Fully aware of PETA's position with respect to the impact the anticipated merger would allegedly have on the Seaquarium's licensure status, APHIS chose not to pursue any APA enforcement action against MEC or FFP, and the Seaquarium continued its business, including exhibiting Toki.  *See* Cmplt. ¶¶ 58-67.  More specifically, APHIS permitted the MEC License to remain in force following the July 2014 MEC/FFP Merger up until the time that APHIS added the Seaquarium to the pre-existing FFP License on June 11, 2015.  *See id.,* ¶¶ 52, 63; *see also* Exhibits 2A-2B and 3A-3B hereto (public licensing records regarding the MEC License and FFP License).  APHIS subsequently cancelled the MEC License on July 7, 2015.  *Id.,* ¶ 52.[6]

Prior to adding the Seaquarium to the pre-existing FFP License, APHIS conducted an inspection of the Seaquarium on June 11, 2015.  *See* Cmplt. ¶ 63.  The Complaint implies (correctly) that the Park passed the inspection.  *See id.*

### F. The Alleged AWA Violations At Issue in This Case and the Prior Cases.

As noted above, Plaintiffs' claims that the Seaquarium is allegedly violating AWA Standards regarding Toki's pool-size, shade conditions and companionship have been repeatedly voiced to APHIS for many years.  These same claims of alleged violations were asserted in the First AWA Case as a basis for challenging the renewal of the then-existing MEC License and, notably, were also asserted unsuccessfully before Judge Ungaro in the ESA Case.[7]

### IV.    ARGUMENT AND CITATION OF AUTHORITIES

The issue before this Court, just like the issue presented to the Court in the First AWA Case, is one of construction of relevant AWA statutes and regulations and the APA limitations

---

[6]    *See also* Exhibit 3A and 3B hereto (APHIS online licensing database records further confirming that the MEC License was still "active" as of July 6, 2015 and only "cancelled" on July 7, 2015).  *See generally* n.5 above (public licensing records may be considered under Rule 12(b)(6)).

[7]    *Compare* Cmplt., ¶¶ 37, 39, 45 *with* the Complaint filed in the First AWA Case, ¶¶ 67, 69, 76 and the Complaint filed in the ESA Case, ¶¶ 45, 56, 66.  Each Complaint is filed at ECF Doc. 1.  The Court may take judicial notice of these prior lawsuits by the same Plaintiffs.  *Bateman Harden PA v. Francis,* 2012 WL 3689402, *2 (M.D. Fla. 2012).

on judicial review of the exercise by an agency of enforcement discretion, 5 U.S.C. § 702. Such issues are legal in nature and are therefore appropriate for resolution via a motion to dismiss for failure to state a claim upon which relief can be granted. *See People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.*, No. 5:15-CV-429-D, 2016 WL 3902745, *5 (E.D.N.C. July 12, 2016) (granting APHIS judgment on pleadings rejecting similar lawsuit by one of the Plaintiffs here challenging AWA licensure of others exhibitors, using Rule 12(c) standard which is very similar to the Rule 12(b)(6) motion to dismiss standard) (hereinafter, "*PETA v USDA*").

### A. The MEC/FFP Merger Did Not Violate the Anti-Transfer Provisions of 9 C.F.R. § 2.5(d) or Necessitate a New License Application by FFP.

In their Complaint, Plaintiffs cite 9 C.F.R. § 2.5(d) as a basis for suggesting that FFP's continued operations of the Seaquarium was illegal after the MEC/FFP Merger. *See* Cmplt. ¶ 1. This APHIS regulation provides that "licenses are issued to specific persons for specific premises and do not transfer upon change of ownership, nor are they valid at a different location." *See* Exhibit 5 hereto (copy of APHIS licensing rules including 9 C.F.R. § 2.5(d)). In making this assertion, Plaintiffs not only confuse the distinction between license transfers and changes of control of corporate licensees, but also disregard the laws governing corporate mergers, which provide that the merged entity steps into the shoes of the remaining entity, without any prohibited assignments or transfers occurring. *Id.* (copy of 9 C.F.R. § 2.8). In cases where there has been a change of control of a licensee, as opposed to an outright transfer of a license, the relevant APHIS regulations only require an after-the-fact notice regarding the change of control, something that FFP indisputably provided in this case.

### 1. A Proper Construction of Rules 2.5(d) and Rule 2.8 of the APHIS Regulations Warrants the Dismissal of Plaintiffs' Complaint.

9 C.F.R. § 2.5(d) does not specifically define "transfer" or "person," nor does it mention mergers or other types of corporate transactions involving licensees that may require APHIS notification or approval. Likewise, the general definitions section of the applicable AWA regulations provides no definition of "transfer" and only provides a standard definition of "person" that includes corporate entities. *See* Exhibit 5 (copy of 9 C.F.R. § 1.1). Rule 1.1 does, however, set forth a typical rule of statutory construction by stating that undefined terms "shall have the meaning attributed to them in general usage as reflected by definitions in a standard

10

dictionary." *Id., see also* ESA Case (June 1, 2015, Order at 21-22 n.20-23 (ECF Doc. 203) (using the New Oxford American Dictionary to define terms contained in the ESA)).

According to the Merriam-Webster's Dictionary, a "transfer" involves a "conveyance of right, title, or interest in real or personal property from one person to another."[8]  A conveyance, in turn, is defined as "an instrument by which title to property is conveyed."[9]  Here, there was no such conveyance of the MEC License from MEC to FFP; instead, as acknowledged by Plaintiffs in their Complaint, the MEC License remained in effect following the MEC/FFP Merger. Cmplt., ¶ 52 (MEC licensed not terminated until July 7, 2015).  Thus, Rule 2.5(d) is inapplicable to the facts of this case and Plaintiffs' claims should be dismissed.

This conclusion is bolstered by a review of 9 C.F.R. § 2.8, the relevant AWA regulation that actually does govern changes in "substantial control or ownership of a business or operations or of additional sites" and directs that the license holder need only give APHIS ***after-the-fact notice*** of a change of control, as FFP did in this case, within 10 days of any such change.  *See* Cmplt. ¶ 59; Exhibit 5 (copy of 9 C.F.R. § 2.8).  While Rule 2.8 does not specifically define the type of change of "control" of a business that would necessitate such a notification, commonly available legal dictionary definitions of "change or control" do include mergers in such definitions.[10]

In this case, the substantial transaction impacting the outside world was the July 1, 2014 sale of 100% of the shares of MEC from Wometco to FFP.  Cmplt. ¶ 59; *see* Exhibit 1 hereto. This change-of-control transaction did not terminate the corporate existence of the license holder, MEC.  Furthermore, the July 3, 2014 merger of MEC into its new 100% parent, FFP, had

---

[8]*See* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/transfer (last accessed January 12, 2017).

[9]   *Id*.,   https://www.merriam-webster.com/dictionary/conveyance   (last accessed January 12, 2017).

[10]  *See, e.g.,* Black's Online Law Dictionary*, http://thelawdictionary.org/change-in-control/* (last accessed January 12, 2017) (defining a change in control as arising when "a firm is acquired by another firm or when an existing or new stockholder acquires a majority or substantively large stock holding); US Legal Online Dictionary*,* https://definitions.uslegal.com/c/change-in-control/ (last accessed January 12, 2017) (defining change in control to include, among other things, mergers).

no practical impact on anyone outside the FFP corporate family. FFP provided notice of both of these corporate transactions to APHIS, and APHIS did not take any enforcement against the license or charge FFP or MEC with operating without a license. Plaintiffs do not allege that either the July 1 or July 3 transactions resulted in any changes to on-site employees at Seaquarium, including the animal caretakers (and there were no such changes). As FFP's Notice to APHIS confirms, FFP became fully subject to MEC's regulatory obligations to APHIS in connection with the Seaquarium upon the merger closing.[11] Thus, there is no basis in fact or law to stretch the plain language of Rule 2.5(d) to conclude that the MEC/FFP Merger necessitated the issuance of a new license to FFP.

### 2. Florida Corporate Law Governing Mergers Confirms That No Transfer of the MEC License Occurred As Part of the MEC/FFP Merger.

As noted above, there is no indication in the plain language of Rule 2.5(d) that APHIS sought to disturb the ordinary operation of state corporate law regarding the impact of mergers on corporate "persons."[12] Florida corporate law, in turn, further supports this conclusion.[13]

---

[11] FFP acknowledged in its Notice to APHIS that "[t]he merged entity possesses all the rights of the merging entities and must comply with all their obligations, including regulatory obligations such as those imposed by the AWA." *See* Exhibit 1 hereto. This is what Florida law mandates. *See* Fla. Stat. § 607.1107. The judicially noticeable Plan of Merger filed in the public record by FFP with the Florida Secretary of State also confirms that FFP is subject to MEC's obligations. *See* Plan of Merger, § 5(e) (Exhibit 4 to this Motion); *Osheroff*, 776 F.3d at 811 (acknowledging judicial notice can be taken of public records of this nature). *See also, In re: Sechler Foods, Inc. and Scott I Sechler*, 59 Agric. Dc. 336, 2000 WL 33420228 (USDA, 2000) (finding in case under the Packers and Stockyards Act that the "cease and desist provisions of [the relevant] order became applicable to the corporate respondent ... when a Certificate of Merger was filed merging [two entities] and leaving [one as] the surviving successor corporation.").

[12] There are no provisions in the statutory text of the AWA requiring approvals for any corporate transactions involving licensees.

[13] As noted by the Supreme Court, when a federal court must interpret a federal law involving an issue of corporate law, it should normally look to state corporate law, unless there is some compelling reason to instead develop federal common law. *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 97-98 (1991). *See also, Longhi v. Animal & Plant Health Inspection Service*, 165 F.3d 1057, 1061 (6th Cir. 1999) (applying Michigan state corporate law to resolve an issue as to whether a shareholder and her corporation were separate "persons" under the

Florida courts have routinely held that when two companies merge, the merged entity steps into the shoes of the merging entity, and automatically has all its rights and obligations, without any transfer or conveyance or assignment occurring. *See, e.g., Johnson Controls, Inc. v. Rumore*, 2008 WL 203575 at **6-*7 (M.D. Fla. 2008) (contractual rights vest in the survivor with no "assignment" or transfer of the contract being deemed to occur); *Corporate Express Office Products, Inc. v. Phillips*, 847 So.2d 406, 412 (Fla. 2003) (same). *See also Imperial Enterprises, Inc. v. Fireman's Fund Ins. Co.*, 535 F.2d 287, 291, n.6 (5th Cir. 1976). Florida cases discussing the construction of contractual anti-transfer provisions likewise hold that the non-survivor of a merger (here, MEC) is deemed to continue in existence after the merger, not as a separate entity, but as part of the merged entity, thus further confirming that a merger does not involve the "transfer" of property from one person to person. *See, e.g., Corporate Express*, 847 So.2d at 412; *Celotex Corp. v. Pickett*, 490 So.2d 35, 38 (Fla. 1986) (merger "merely directs the blood of the old corporation into the old, the old living in the new") (quoting *Atlanta Newspapers, Inc. v. Doyal*, 65 S.E.2d 432, 437 (Ga. App. 1951)); *Imperial Enterprises*, 535 F.2d at 291, n.6 ("the consolidation of two or more corporations is like the uniting of two or more rivers, neither stream is annihilated, but all continue in existence. A new river is formed, but it is a river composed of the old rivers, which still exist, though in a different form.") (quoting *Atlanta Newspapers, Inc.,* 65 S.E.2d at 437). Thus, Florida merger law, which is consistent with the plain language of Rule 2.5(d), supports the conclusion that Plaintiffs' Complaint fails as a matter of law.

3. **Plaintiffs Cannot Require APHIS to Enforce Rule 2.5(d) Since APHIS Has Unreviewable Enforcement Discretion With Respect to Alleged Violations of APHIS Rules and Rule 2.5(a) Protects Licensees.**

As frequent advocates in the field of animal law, Plaintiffs are well aware that the AWA and APA do not provide Plaintiffs with a private right of action against MEC or FFP, as licensees. Plaintiffs therefore sued APHIS, claiming that it failed to properly enforce Rule 2.5(d) following the merger. For the reasons noted above, Plaintiffs' claims are without merit. Even assuming, *arguendo*, that Plaintiffs are correct in their assertion that the merger was a prohibited

APHIS rule prohibiting a single "person" from holding more than one AWA license, 9 C.F.R. § 2.1(b) – finding they were separate "persons" unless the state law "alter ego" standard was met).

transfer of a license from MEC to FFP (which it was not), Plaintiffs still fail to state a viable claim against APHIS for two additional reasons set forth below.[14]

First, as Plaintiffs well know from their experiences in the First AWA Case, and in connection with numerous other cases they have filed around the country, APHIS has unreviewable enforcement discretion to file or not file an administrative complaint against a licensee for alleged substantive violations of the AWA Standards. *See ALDF*, 789 F.3d at 1214, 1225, and n.7 (the APA generally bars third parties from obtaining judicial reviews of agency decisions not to bring enforcement action, because such decisions "are committed to agency discretion by law," and so unreviewable under 5 U.S.C. § 701(a)(2), citing *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)); *see also, Conservancy of Southwest Florida v. U.S. Fish & Wildlife Serv.*, 677 F.3d 1073, 1083 (11th Cir. 2012). Logic and common sense dictate that if APHIS possesses such enforcement discretion with respect to alleged **substantive** violations of AWA Standards found in 9 CFR Part 3, the same enforcement discretion equally exists with respect to alleged violations of the AWA's **procedural** licensing rules in 9 CFR Part 2, such as 9 C.F.R. § 2.5(d). The general bar against judicial review of exercise of enforcement discretion derives from the APA, *see Heckler*, 470 U.S. at 831, and so applies in any judicial review case, including this one.

Plaintiffs' Complaint unequivocally establishes that APHIS elected to exercise its enforcement discretion in **not** filing an administrative complaint against either MEC or FFP as a result of the MEC/FFP Merger. Instead, APHIS elected to keep the MEC License in effect until July 7, 2015, and only terminated that license after APHIS added the Seaquarium to the pre-existing FFP License on June 11, 2015. Cmplt. ¶¶ 52, 63. At the time that APHIS made these decisions, it was fully informed of both PETA's opinions set forth in its Protest Letter and the facts set forth in FFP's Notice. *See* Cmplt. ¶¶ 58, 59; Exhibit 1. While Plaintiffs may not agree with the APHIS's decisions, these were discretionary enforcement decisions that were not

---

[14]   Moreover, Plaintiffs' Rule 2.5(d) claim relates to whether there was compliance with Rule 2.5(d) in a past time period, specifically from the July 2014 merger through when the Seaquarium was added to the FFP license on June 11, 2015. Plaintiffs have failed to show whether this dispute over a past time period remains a live justiciable non-moot controversy, given that the APA provides for prospective relief. *See* 5 U.S.C. §§ 702, 704, 706.

judicially reviewable; Plaintiffs, therefore, cannot ask this Court to grant them relief to which they are not legally entitled. *ALDF*, 789 F.3d at 1214, 1225 and n.7.

Second, Plaintiffs' claim also ignores and is contrary to the due process protections codified in APHIS rules implementing Section 19 of the AWA, 7 U.S.C.§ 2149, which entitle licensees to notice and the opportunity to defend claims of violations before a USDA Administrative Law Judge, and to rely on their licenses until revoked in such a proceeding. Significantly, Rule 2.5(a) provides that a "license issued under this part shall be valid and effective *unless the license is "revoked or suspended pursuant to section 19 of the Act*" in such an administrative enforcement proceeding or if one of several other inapplicable exceptions occur. *See* 9 C.F.R. § 2.5(a) (emphasis supplied).[15]  No such revocation or suspension ever occurred and no administrative enforcement proceeding was ever filed.  *See* Cmplt; *see also ALDF*, 789 F.3d at 1216 (Rule 2.5(a) illustrates that the AWA provides for licenses to be terminated for rule violations only through "discretionary enforcement proceedings" in which licensees receive due process); 7 U.S.C. § 2149; 9 C.F.R. § 2.12 (licensee's right to notice and hearing before ALJ).

In short, whether or not the merger complied with Rule 2.5(d), APHIS was within its rights to allow the Seaquarium's licensure to continue under the MEC License until APHIS added the Seaquarium to the FFP License.  Plaintiffs cannot compel APHIS to take a step APHIS is not legally obligated to take (*i.e.,* file an enforcement action alleging illegal operation of the Park without a license following the merger).  Nor can Plaintiffs usurp the role of the USDA Administrative Law Judge in deciding the legal and remedy issues that would be involved had APHIS taken that step, or deny FFP its right to a hearing before an Administrative Law Judge to contest such charges.

---

[15]  The inapplicable exceptions in Rule 2.5(a) involve administrative matters such as not paying the license fee, requesting voluntary termination, or not applying for a renewal.  The reference in Rule 2.5(a) to "or terminated under this part" refers to Rule 2.12, which provides that a license "may be terminated … after a hearing in accordance with the rules of practice" before USDA Administrative Law Judges.

**B.** **Because APHIS Did Not Grant a New License to FFP, The Restrictions of 7 U.S.C. § 2133 Do Not Apply.**

Regardless of the debate over compliance with the licensing rules following the merger in July 2014, the licensing action that APHIS ultimately took in June 2015 in response to this merger of two licensed exhibitors was not the "issuance" of a new "initial" license subject to the restrictions of 7 U.S.C. § 2133 and 9 CFR 2.3(b).  As noted above, the Eleventh Circuit in *ALDF* construed Section 2133 (requiring a demonstration of compliance with the AWA Standards before a licensed is "issued") as applying to issuance of a *new* license, but not to continuation of license through renewal.   789 F.3d at 1223-25.   Implementing Section 2133, Rule 2.3(b) specifically provides that "each applicant for an *initial license* must … demonstrate compliance with the regulations and standards." *See* Exhibit 5 (copy of 9 C.F.R. § 2.3(b), emphasis supplied).  This regulation says nothing about compliance with regulations and standards being a condition precedent to permitting holders of licenses to continue to maintain their licensure status following a change in control, nor does Rule 2.8 make mention of any such requirement.  Thus, moving a facility from one license to another following a merger of two license holders is not the legal equivalent of the issuance of a *new* initial license.  Instead, it is at best an "act to restore to fullness or sufficiency" of a license, something far more analogous to a license renewal, which the Eleventh Circuit concluded in the First AWA Case was not subject to the requirements of Rule 2.5(b). [16]  *See ALDF,* 789 F.3d at 1216.  Indeed, it borders on absurdity for Plaintiffs to argue that APHIS's licensing action following the MEC/FFP Merger amounted to the issuance of an "initial" license given that the Seaquarium facility was first licensed in 1978, and has exhibited wildlife, including Toki, there for decades.

Very recent case law involving one of the Plaintiffs in this case, PETA, supports this conclusion.  *See PETA v. USDA,* 2016 WL 3902745, *5.  In this highly analogous case, PETA challenged the renewal of licenses of other animal exhibition facilities, claiming that renewal of

---

[16]   Because 9 C.F.R. § 2.1(b) prevents a single person from holding more than one license, FFP could not operate under both the MEC License and FFP License indefinitely into the future. APHIS, however, had enforcement discretion to defer taking any action with respect to Rule 2.1(b) and APHIS ultimately elected to effectively consolidate the two licenses, leaving the FFP License in effect.

licenses is subject to 7 USC § 2133.[17]  In granting APHIS's Rule 12(c) motion for judgment on the pleadings, the Eastern District of North Carolina recognized that a license renewal was an example of how a license can be "modified" without such modification constituting the grant of a new initial license.  The court stated, in pertinent part, as follows:  "A modification to an existing license, such as an extension of the term length, does not constitute 'giving out' a license.  Thus, renewing a license … does not constitute 'issuance' of a new license." *See PETA v USDA* at *5.[18]

    This recent decision is highly instructive in this case given that the court in *PETA v USDA* treated a license renewal as a type of license **modification**, and distinguished such a license modification from the issuance of an initial new license.   Analogously, here, a consolidation of two previously issued licenses following a merger of two licensees is another example of the broader class of license modifications that should likewise not be subjected to the more stringent requirements of Rule 2.3(b), especially since neither party to the merger was an unlicensed facility that Congress mandated should be closely scrutinized for AWA Standards compliance before the issuance of a new license.  *See* 7 U.S.C. § 2133; 9 C.F.R. § 2.3(b) (setting the more stringent rules applicable to application for an "initial license"); *ALDF*, 789 F.3d at 1223-25 (Congress chose to require that APHIS expend the resources to ensure compliance with the AWA Standards only when issuing new licenses, and so not for license renewals).  In sum, moving the Seaquarium from the MEC License to the FFP License was a modification or continuation of pre-existing licensure that never terminated.  It was not the initial issuance of a new license subject to 7 U.S.C. § 2133.  Thus, under *ALDF*, APHIS was not obligated to ensure compliance with the AWA Standards before taking that licensing action.  789 F.3d at 1224-25.[19]

---

[17]  This was the same argument PETA lost in *ALDF*, but PETA nevertheless re-advanced it in a court outside the Eleventh Circuit.

[18]  PETA's appeal is pending, *PETA v. USDA*, Case No. 16-2029, U.S Court of Appeals for the Fourth Circuit.

[19]  The possibility that APHIS might have lawfully elected some other course of action following the merger does not distinguish this case from the *ALDF* case.  It is Plaintiffs' burden as the proponents of this judicial review lawsuit to show that APHIS acted unlawfully in continuing licensure following the MEC/FFP Merger, not FFP's burden to show that APHIS was legally compelled to continue licensure as it did.  The Eleventh Circuit, in *ALDF*, grounded its decision

**C. Judicial Review of APHIS's AWA Standards Compliance Findings Is Not Available Unless Plaintiffs Can Establish That APHIS Was Legally Obligated to Ensure Compliance Before Taking the Licensing Action.**

In the First AWA Case, APHIS elected to evaluate the Seaquarium's compliance with the AWA Standards and notified Plaintiff ALDF in writing that it was granting renewal because there was compliance. *See ALDF*, 789 F.3d at 1211 ("In a March 28, 2012 letter, [APHIS] responded to ALDF's letter, stating that USDA intended to renew Seaquarium's exhibitor's license because it found Seaquarium was 'in compliance with the regulations and standards, and none of the other criteria for license denial ... are applicable.'"). Similarly, in this case, APHIS likewise elected to inspect the Seaquarium before adding the Seaquarium to the FFP License. Cmplt., ¶ 63.

As in *ALDF*, Plaintiffs seek judicial review of the inspection compliance findings of APHIS favoring the Seaquarium. Given the Eleventh Circuit's clear holding in *ALDF* (*i.e.,* third parties are not entitled to judicial review of favorable findings made by APHIS in a compliance review that APHIS ***was not legally obligated to conduct***), Plaintiffs must establish that there is some authority imposing such a legal obligation on APHIS in connection with APHIS's decision to name the Seaquarium as a second site under the pre-existing FFP License. As explained above, 7 U.S.C. § 2133 provides no such authority, and Plaintiffs have not cited in their Complaint any other authority imposing such an obligation on APHIS. Notably, although Plaintiffs make the vague and conclusory allegation that "USDA has a longstanding policy that requires an inspection and demonstration of AWA compliance before any regulated activities are conducted at a licensee's new site," Cmplt. ¶ 65, Plaintiffs do not identify the alleged "longstanding policy"[20] or otherwise provide support for their assertion,[21] and so have not

---

in Plaintiffs' failure to identify a real "legal requirement" that APHIS ensure compliance with the AWA Standards before granting renewal. *ALDF*, 789 F.3d at 1224, n.13 (finding Plaintiffs' argument that APHIS had that legal duty was "fictitious"). That same reasoning should apply in this case where Plaintiffs fail to identify a legal obligation on the part of APHIS to ensure compliance with AWA Standards before taking the licensing actions at issue in this case.

[20]   Plaintiffs' conclusory references to an unidentified "policy" fail to satisfy the pleading requirements of Fed. R. Civ. P. 8. *See Barr v. Gee*, 437 Fed. Appx. 865, 875 (11th Cir. 2011) (failure to identify in factual allegations the purported policies or customs by which Gee allegedly infringed plaintiff's rights, *inter alia*, resulted in dismissal of claims); *Mighty v.*

complied with basic pleading requirements.  *Id*.  Accordingly, because APHIS was not legally obligated to ensure compliance before taking the licensure action challenged by Plaintiffs, judicial review of APHIS' findings is not available.

## IV.  CONCLUSION

Plaintiffs' third lawsuit challenging the care Seaquarium provides to its beloved Toki is no more viable than its prior lawsuits.  Plaintiffs have failed to successfully distinguish the Eleventh Circuit's controlling holding in *ALDF* and have otherwise failed to state a claim upon which relief may be granted.  The Complaint should therefore be dismissed with prejudice.

---

*Miami–Dade County,* 2015 WL 5031571 at *3-*7 (S.D. Fla. 2015) (section 1983 claim based, *inter alia*, on an official policy of using excessive force was dismissed because of lack of factual allegations showing adoption of such policy by the county - "there are no factual allegations to support an official policy and the plaintiff cannot rely on mere labels or conclusory allegations to plead the existence of such a policy."); *Thomas v. Poveda*, 2010 WL 11468938 at *2-*3 (S.D. Fla. 2010) (conclusory statements that it is the defendants' custom and policy to destroy medical records when grievances are filed are too conclusory to state a claim).  *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Speaker v. U.S. Dept. of Health and Human Services CDC*, 623 F.3d 1371, 1381 (11th Cir. 2010); *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293-95 (11th Cir. 2010).

[21]   Moreover, Plaintiffs have failed to provide any basis for concluding that any "policy" to which they have referred binds APHIS, as would be necessary to create a legal requirement that APHIS ensure AWA Standards compliance before taking licensing action.  *See ALDF*, 789 F.3d at 224, n.13.  Whatever policy Plaintiffs may be referring to, agency guidance documents generally do not bind an agency unless they are adopted as rules pursuant to the APA rulemaking requirements.  *See* 5 U.S.C. § 553. *See also Kirkland Masonry, Inc. v. C.I.R.,* 614 F.2d 532, 533 (5th Cir. 1980) ("Although federal agencies are bound by their own regulations, a simple administrative directive to agency employees does not suffice to create a duty to the public" enforceable against the agency); *Wilderness Society v. Norton*, 434 F.3d 584, 595-596 (D.C. Cir. 2006) (National Park Service policies do not bind the agency).

Dated: January 17, 2017

Respectfully submitted,

/s/ Mark A. Salky
Mark A. Salky, Esq.
Florida Bar No. 058221
salkym@gtlaw.com
Evelyn A. Cobos
Florida Bar No. 92310
cobose@gtlaw.com
GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue
Miami, Florida 33131
Telephone: (305) 579-0500

James H. Lister, Esq. (*Pro hac vice*)
jlister@dc.bhb.com
Birch, Horton, Bittner & Cherot, P.C.
Suite 1020
1156 15th Street, NW
Washington, D.C.  20005
Telephone: (202) 659-5800

Jennifer B. Moore, Esq. (*Pro hac vice*)
moorej@gtlaw.com
GREENBERG TRAURIG, LLP
Terminus 200
3333 Piedmont Road NE
Suite 2500
Atlanta, GA 30305
Telephone: (678) 553-2100

*Counsel for Defendant-Intervenor Festival
Fun Parks, LLC d/b/a Miami Seaquarium*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 17, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system.  I also certify that the foregoing document is being served via transmission of Notices of Electronic Filing generated by the CM/ECF system on Counsel of Record on this matter listed on the attached Service List.

/s/ Mark A. Salky
Mark A. Salky

## SERVICE LIST

Jared Goodman
PETA Foundation
2154 W. Sunset Blvd.
Los Angeles, CA 90026
Tel: 323-210-2266
Email: jaredg@petaf.org

*Attorneys for Plaintiffs*

Matthew G. Liebman
Animal Defense Legal Fund
525 East Cotati Avenue
Cotati, CA  94931
Tel: (707) 795-2533
Fax: (707) 795-7280

*Attorneys for Plaintiff Animal Legal Defense
Fund*

Daniel A. Casey
April Boyer
K&L Gates LLP
Southeast Financial Center
200 South Biscayne Boulevard, Suite 3900
Miami, Florida  33131
Tel: (305) 539-3300
Email: daniel.casey@klgates.com
Email: april.boyer@klgates.com

*Attorneys for Plaintiffs*

Anthony Erickson-Pogorzelski
US Attorney's Office
Civil
99 NE 4th Street
Suite 335
Miami, FL 33132
Tel: 305-961-9296
Fax: 305-530-7139
Email: anthony.pogorzelski@usdoj.gov

*Attorney for Defendants United States
Department of Agriculture and Elizabeth
Goldentyer in her official capacity as Director
of Animal Welfare Operations for the Eastern
Region of the United States Department of
Agriculture Animal and Health Inspection
Service*

21