UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-24793-CIV-GAYLES/DAMIAN

PEOPLE FOR THE ETHICAL TREATMENT
OF ANIMALS, INC., *et al.*,

    Plaintiffs,
v.

UNITED STATES DEPARTMENT OF
AGRICULTURE, *et al.*,

    Defendants,
and

FESTIVAL FUN PARKS, LLC d/b/a
MIAMI SEAQUARIUM,

    Defendant-Intervenor.
_____/

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS COMPLAINT AS MOOT [ECF NO. 167]**

THIS CAUSE is before the Court on Defendants, United States Department of Agriculture ("USDA") and Elizabeth Goldentyer, in her official capacity as the Director of Animal Welfare Operations for the Eastern Region of the USDA Animal and Plant Health Inspection Service (collectively, "Defendants"), Motion to Dismiss Complaint as Moot, filed March 25, 2022 [ECF No. 167] (the "Motion").[1] The undersigned has reviewed the Motion, Plaintiffs' Response [ECF No. 169], Defendant-Intervenor's Joinder in the Motion [ECF No. 170], and Defendants' Reply [ECF No. 171], as well as all pertinent portions of the record and is otherwise fully advised in the premises.

---

[1] This case was referred to the undersigned by the Honorable Darrin P. Gayles, United States District Judge, for a ruling on all pre-trial, non-dispositive matters and a report and recommendation on all dispositive matters. [ECF No. 174].

This case arises out of Plaintiffs' challenge to the issuance of a license to exhibit an orca, or killer whale, known as "Lolita" (also known as "Tokitae" or "Toki") at Miami Seaquarium in Key Biscayne (the "Seaquarium"). Plaintiffs, People for the Ethical Treatment of Animals, Inc., Animal Legal Defense Fund, Orca Network, and Howard Garrett (collectively, "Plaintiffs"), have raised numerous challenges regarding the conditions of Lolita's exhibition and treatment at the Seaquarium over the years on various bases.[2] The instant case has been pending since 2016. Now, a new legal issue has arisen because the current operators of the Seaquarium have indicated that Lolita will no longer be exhibited to the public. The question, then, is whether Plaintiffs' Complaint is now moot as a result.

## I. BACKGROUND

The procedural and factual background of this case are lengthy and intricate, but they are relevant to the issues now before the Court, so they warrant review.

### A. Lolita

Lolita, a 20-foot long, 7000-pound orca, was captured in August 1970 in Penn Cove, off the coast of Washington State. [ECF No. 1], Compl. ¶ 32; *see also Animal Legal Def. Fund*, 789 F.3d at 1210. She was approximately 3–6 years old at the time and a member of the L pod of the Southern Resident Killer Whale population, which has since been listed as endangered. Compl. ¶ 32. The Seaquarium purchased Lolita, and she has lived in captivity since September 24, 1970. *Id.* ¶ 33. Lolita lives in a tank shared with a Pacific white-sided

---

[2] *See generally People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 879 F.3d 1142 (11th Cir. 2018) (lawsuit against the Seaquarium for alleged violations of the Endangered Species Act regarding Lolita's treatment and tank conditions); *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1210 (11th Cir. 2015) (lawsuit challenging the USDA's renewal of the Seaquarium's license to exhibit Lolita under conditions that allegedly violate the Animal Welfare Act's standards).

dolphin at the Seaquarium's "Whale Stadium," where Lolita performed for the public at the "Killer Whale and Dolphin Show." *Animal Legal Def. Fund*, 789 F.3d at 1211.

### B. The Animal Welfare Act

The Animal Welfare Act ("AWA"), 7 U.S.C. 2131 *et seq.*, prohibits exhibitors[3] from exhibiting any animals unless they "have obtained a license from the Secretary [of Agriculture] and such license shall not have been suspended or revoked." 7 U.S.C. § 2134. The AWA vests the Secretary with the authority to "promulgate such rules, regulations, and orders as he may deem necessary in order effectuate the purposes" of the statute. *Id.* § 2151. Pursuant to this section, the Secretary has adopted comprehensive renewal regulations that combine administrative requirements, random inspections, and discretionary enforcement proceedings. *See Animal Legal Def. Fund*, 789 F.3d at 1211. To obtain an AWA license, an exhibitor must "demonstrate[] that his facilities comply with the standards promulgated by the Secretary[.]" *Id.* § 2133. One such standard provides that "[l]icenses are issued to specific persons for specific premises and do not transfer upon change of ownership, nor are they valid at a different location." 9 C.F.R. § 2.5(d) (2016)).

### C. The Seaquarium's AWA License

The former owner of the Seaquarium, Miami Exhibition Corporation ("MEC"), had been licensed to exhibit animals, under a "Class C" exhibitor license (no. 58-C-0147), since April 21, 1978, pursuant to 9 C.F.R. §§ 1.1 and 2.1. Compl. ¶ 31. In March 2014, Defendant-Intervenor, Festival Fun Parks, LLC ("FFP" or "Defendant-Intervenor"), announced that it had signed an agreement for acquisition of the Seaquarium, which was still owned by MEC

---

[3] The AWA defines an "exhibitor" as "any person ... exhibiting any animals, which were purchased in commerce or the intended distribution of which affects commerce, or will affect commerce, to the public for compensation[.]" 7 U.S.C. § 2132(h).

3

at that time. *Id.* ¶ 57. On April 22, 2014, after the announcement but before the acquisition was finalized, the USDA issued FFP a "Class C" exhibitor license (no. 12-C-0052) to exhibit animals at a specific premises, "Story Land," in Glen, New Hampshire, which, at the time held one covered animal, a single European rabbit. *Id.* ¶¶ 60–61.

Through a series of transactions between July 1 and July 3, 2014, FFP's acquisition of the Seaquarium closed, following which FFP became the sole owner of the Seaquarium, which continued to operate under the same name. *Id.* ¶ 59. Thereafter, on or around April 22, 2015, the USDA renewed FFP's license through an administrative procedure for renewing a license, which, unlike the procedure for obtaining a new license, does not require a showing of compliance with the AWA standards. *Id.* ¶ 62. Then, on June 11, 2015, the USDA conducted a "routine" inspection of the Seaquarium and, on the inspection report, for the first time labeled the premises "Site 002" under FFP's license, meaning, the Seaquarium was approved as an additional site on FFP's previously issued license. *Id.* ¶¶ 63–65. According to Plaintiffs, the USDA did not require that the Seaquarium demonstrate compliance with AWA standards prior to FFP conducting regulated activities at the site. *Id.* ¶ 66. Instead, according to the allegations in the Complaint, the USDA allowed FFP to exhibit animals at the Seaquarium without a valid license for nearly a year and then improperly allowed FFP to add the Seaquarium to its existing license as an additional site without ever demonstrating compliance with AWA regulations. *Id.* ¶ 67.

### D. The Instant Case

On May 18, 2016, Plaintiffs filed the Complaint[4] in the instant case under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), alleging Defendants acted in

---

[4] The Complaint was originally filed in the Eastern District of North Carolina and was transferred to this District on November 16, 2016. [ECF No. 36].

violation of the AWA's regulations in a manner that is arbitrary, capricious, and an abuse of discretion, or otherwise contrary to law. *Id.* ¶ 68. In the Complaint, Plaintiffs request that the Court:

> (1) [d]eclare that Defendants acted arbitrarily and capriciously and not in accordance with law, abused their discretion, and exceeded their statutory jurisdiction and authority, or otherwise [acted] in violation of the APA, in licensing Seaquarium as a new site under [FFP]'s license notwithstanding the facility's noncompliance with AWA regulations; [and]
>
> (2) [s]et aside as unlawful Defendants' decision to license Seaquarium as a new site under FFP's license[.]

Compl. at 16, Request for Relief ¶¶ (1)–(2) (alterations added).

On July 29, 2016, FFP filed an Unopposed Motion to Intervene in the case [ECF No. 21], which was granted on August 8, 2016. [ECF No. 28]. A lot has happened in the seven years since the Complaint was filed.

In June 2019, the Court, by the Honorable Marcia G. Cooke, dismissed the case based on lack of subject matter jurisdiction and failure to state a claim. [ECF No. 117]. On May 11, 2021, the Eleventh Circuit reversed the Order dismissing the case and remanded the case for further proceedings. [ECF No. 125]; *see also People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.*, 851 Fed. App'x 896 (11th Cir. 2021).

Shortly thereafter, on September 23, 2021, Defendants filed a Motion for Voluntary Remand seeking an order remanding the case to the USDA for reconsideration and issuance of a new decision with respect to the licensure of the Seaquarium. [ECF No. 137]. Plaintiffs opposed the remand, arguing, *inter alia*, that the motion was an attempt by Defendants to avoid judicial review of their actions and would cause further prejudice to Plaintiffs. [ECF No. 141].

Meanwhile, in November 2021, Plaintiffs filed a Motion to Supplement the Administrative Record and requested that the Court conduct an *in camera* review of the record to determine whether Defendants improperly redacted documents regarding the process for licensing the Seaquarium. [ECF No. 159]. Afterwards, on March 7, 2022, Defendant-Intervenor, FFP, filed a Notice advising the Court that, on March 3, 2022, FFP sold the Seaquarium to MS Leisure Company, Inc. ("MS Leisure"), an affiliate of The Dolphin Company. [ECF No. 164]. In the Notice, FFP indicated that it was no longer exhibiting animals at the Seaquarium and, therefore, it no longer needs an AWA license for the Seaquarium. *Id.*

On March 25, 2022, Defendants filed the Motion to Dismiss now before the Court. [ECF No. 167]. In the Motion, Defendants argue that the relief sought in Plaintiffs' Complaint is now moot because, following MS Leisure's purchase of the Seaquarium from FFP, MS Leisure informed Defendants that it was not seeking a license to exhibit Lolita as it would no longer be exhibiting the orca to the public. According to Defendants, "the only meaningful relief sought by way of the Complaint has been achieved—i.e., Seaquarium is no longer licensed as a second site under FFP's AWA license (and Lolita and her tank are no longer exhibited and, therefore, cannot be licensed under the AWA)[.]" *Id.* at 2. Plaintiffs oppose the Motion. [ECF No. 169]. On April 15, 2022, Defendant-Intervenor joined in Defendants' Motion to Dismiss. [ECF No. 170].

The Motion to Dismiss is ripe for adjudication and is addressed below. The other pending motions, the Motion to Remand and the Motion to Supplement the Administrative Record, are stayed pending resolution of the Motion to Dismiss. [ECF No. 172].

## II.   APPLICABLE LEGAL STANDARDS

"Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.'" *Hernandez Rodriguez v. U.S. Att'y Gen.*, No. 19-CV-21647, 2019 WL 2231219, at *1 (S.D. Fla. May 23, 2019) (Bloom, J.) (quoting *Mingkid v. U.S. Att'y Gen.*, 468 F.3d 763, 768 (11th Cir. 2006)). "A federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Id.* (quoting *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1265 (11th Cir. 2010)). "The doctrine of mootness derives directly from the case-or-controversy limitation because 'an action that is moot cannot be characterized as an active case or controversy.'" *Id.* (quoting *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001)). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (quoting *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1216–17 (11th Cir. 2000)). "Put another way, '[a] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.'" *Id.* (quoting *Fla. Ass'n of Rehab. Facilities*, 225 F.3d at 1217). "Therefore, if events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Id.* (quoting *Soliman v. United States*, 296 F.3d 1237, 1242 (11th Cir. 2002)). "Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." *Id.* (quoting *Fla. Ass'n of Rehab. Facilities*, 225 F.3d at 1217). Moreover, "[i]n considering whether a case is moot, [courts] 'look at the events at the present time, not at the time the complaint was filed or when the federal order on review was issued.'" *O'Neal v. United States*, 825 F. App'x 695, 697 (11th Cir. 2020) (alterations added) (quoting *Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1254 (11th Cir. 2001)).

## III. DISCUSSION

In their Motion, Defendants argue that Plaintiffs' Complaint should be dismissed as moot because:

> In this case, events that occurred subsequent to the filing of the lawsuit—namely the removal of Seaquarium from FFP's AWA license—deprive the Court of the ability to give Plaintiffs any meaningful relief. Not only is this entire case premised upon an allegation that the decision to add Seaquarium onto FFP's existing AWA license is a violation of the APA, the only meaningful relief sought by Plaintiffs is an order setting aside [Defendants'] licensing decision . . . . As that decision has been effectively undone by FFP's voluntary removal of Seaquarium from [its] AWA license, there is nothing for this Court to do.

Mot. at 3 (alterations added). Plaintiffs respond that this case should not be dismissed as moot because Defendants have not met their burden under the voluntary cessation exception. More specifically, Plaintiffs argue:

> Defendants have failed to meet their "heavy" and "formidable" burden to establish that Plaintiffs' challenge to their licensing decision is moot. They have now "continu[ally] and deliberate[ly]" licensed the Seaquarium under three separate owners, despite that Lolita's conditions have consistently violated the AWA minimum standards since those regulations were enacted decades ago. They assert no "genuine change of heart," and fail to acknowledge that they erred in licensing the facility under these circumstances. In fact, their motion makes clear that the challenged conduct can be expected to recur, as they will again be in a position to license Lolita's exhibition if MS Leisure should merely request it.

Resp. at 4 (internal citations omitted). To support their argument, Plaintiffs rely on *United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348 (11th Cir. 2019), and *National Association of Boards of Pharmacy v. Board of Regents of the University System of Georgia*, 633 F.3d 1297 (11th Cir. 2011). As discussed below, Plaintiffs' argument fails.

### A. *The Voluntary Cessation Exception Is Not Applicable.*

Under the voluntary cessation exception, "[a] case does not necessarily become moot when a defendant voluntarily ceases the activity that forms the basis of the lawsuit." *A.R. v.*

8

*Sec'y Fla. Agency for Health Care Admin.*, 769 F. App'x 718, 725 (11th Cir. 2019) (alteration added) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). Rather, "voluntary cessation of offensive conduct will only moot litigation if it is clear that *the defendant* has not changed course simply to deprive the court of jurisdiction." *Id.* (emphasis added) (quoting *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th Cir. 2005)).

Here, Defendants have not voluntarily terminated the activity that formed the basis of Plaintiffs' Complaint. What caused the allegedly unlawful activity to cease was FFP's sale of the Seaquarium to MS Leisure, followed by MS Leisure's decision not to exhibit Lolita, her tank, and the Pacific white-sided dolphin, and FFP's request that Defendants remove the Seaquarium from its AWA license. The Declaration of Dr. Elizabeth Goldentyer supports this conclusion. In her Declaration, Dr. Goldentyer states:

> On December 14, 2021, MS Leisure . . . submitted to [USDA] an application dated December 7, 2021, for a Class C – Exhibitor license. The application sought licensure, under the authority of the [AWA], of the . . . Seaquarium[.] At that time, Seaquarium was licensed as an additional site of [FFP's license], 52-C-0052 (FFP), however, it was in the process of being sold to MS Leisure. On February 22, 2022, MS Leisure conveyed to [USDA] that it had decided to remove Whale Stadium and the animals contained therein from exhibition, and correspondingly, did not seek licensure of the same. Whale Stadium houses "Lolita" (a killer whale) and one Pacific white-sided dolphin. On March 2, 2022, Animal Care issued a license (58-C-1252) to MS Leisure. Since Whale Stadium, "Lolita" and the Pacific white-sided dolphin are no longer on exhibit and, therefore, are no longer regulated under the [AWA], MS Leisure's license does not include Whale Stadium, "Lolita", or the Pacific white-sided dolphin. Returning "Lolita", the Pacific white-sided dolphin, and Whale Stadium to exhibition would require that MS Leisure submit a new license application. On March 7, FFP informed [USDA] that on March 3, 2022, it had closed on the sale of Seaquarium to MS Leisure. FFP requested that [USDA] remove the additional site of Seaquarium from its AWA license. On March 8, 2022, [USDA] removed Seaquarium from FFP's license.

[ECF No. 167-1], Goldentyer Decl. at ¶¶ 2–7 (alterations added). Dr. Goldentyer's Declaration demonstrates that it was the actions of third parties (MS Leisure and FFP) that

9

caused the allegedly unlawful activity to cease. Indeed, but for the sale of the Seaquarium by FFP to MS Leisure, MS Leisure's decision not to exhibit Lolita, her tank, and the Pacific white-sided dolphin, and FFP's request that Defendants remove the Seaquarium from its AWA license, this action would still be a live controversy. *See id.* Notably, Plaintiffs did not proffer any evidence to rebut or contradict the statements in Dr. Goldentyer's sworn declaration, and nothing in the record suggests it was the actions of Defendants that caused the change.

Moreover, because of the actions of MS Leisure and FFP, the Court cannot grant the relief that Plaintiffs request. As previously mentioned, in this lawsuit, Plaintiffs challenge Defendants' decision to license the Seaquarium as an additional site under FFP's license and request that the Court declare that Defendants acted arbitrarily and capriciously in licensing Seaquarium as an additional site under FFP's license and set aside that licensing decision. *See* Compl. at ¶ 68 and Req. for Relief at p. 16 ¶¶ (1)–(2). However, due to FFP's sale of the Seaquarium to MS Leisure, followed by MS Leisure's decision not to exhibit Lolita, her tank, and the Pacific white-sided dolphin, and FFP's request that the Seaquarium be removed from its AWA license, there is no longer a license to challenge. Nor can the Court provide Plaintiffs with the relief they request because there is no license for the Court to set aside, and no decision in effect to declare invalid. As such, there is nothing for the Court to declare unlawful. *See, e.g., Nat'l Parks Conservation Ass'n v. United States Army Corps of Eng'rs*, 574 F. Supp. 2d 1314, 1321 (S.D. Fla. 2008) (Jordan, J.) (finding that a case was moot where the permit being challenged expired and reasoning that the plaintiffs "seek declaratory and injunctive relief for a permit that has expired and an accompanying biological opinion that has no current legal effect. There is no existing authorization under the [Clean Water Act] or the [Endangered Species Act] for [the court] to declare invalid. Moreover, there is no longer

10

a permit before [the court] to set aside. Furthermore, because the permit expired, no future filing may occur, and there is no activity for [the court] to enjoin") (alterations added).

Plaintiffs' reliance on *Askins & Miller* and *National Association of Boards of Pharmacy* is misplaced. In *Askins & Miller*, the Eleventh Circuit considered whether a case was moot under the voluntary cessation exception where a defendant that "habitually fail[ed] to pay its federal employment taxes" went out of business. 924 F.3d at 1351. Thus, in that case, it was the defendant that terminated the allegedly unlawful conduct. Similarly, in *National Association of Boards Of Pharmacy*, the Eleventh Circuit applied the voluntary cessation exception where the defendants ceased engaging in the allegedly unlawful activity. In that case, the plaintiff sought damages and injunctive relief under the Copyright Remedies Clarification Act against the defendants for appropriating the plaintiff's written materials protected by the Copyright Act. 633 F.3d at 1300. The defendants argued that the case was moot because the allegedly infringing materials had been seized, the defendants canceled the review course that used the infringing materials, and the professor who taught that review course was no longer teaching it. *Id.* at 1303. All of those changes were caused by the defendants. Accordingly, *Askins & Miller* and *National Association of Boards of Pharmacy* are distinct from the case at bar because in those cases *the defendants* voluntarily ceased engaging in the allegedly unlawful activity, whereas that is not the case here. Put simply, here, it was the actions of third parties (MS Leisure and FFP) that caused the allegedly unlawful activity to cease. The undersigned therefore finds that Plaintiffs' reliance on *Askins & Miller* and *National Association of Boards of Pharmacy* is erroneous.

Because it was not Defendants who caused the allegedly unlawful conduct to cease but was, instead, the actions of others that caused it to stop, the voluntary cessation doctrine does not apply.

11

### B. *Even If The Voluntary Cessation Exception Was Applicable, This Case Would Still Be Moot.*

Alternatively, even if it were Defendants' actions that caused the allegedly unlawful activity to cease, the instant case would still be moot. "Generally, the 'party asserting mootness' bears the 'heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again.'" *Nat'l Ass'n of Bds. of Pharmacy*, 633 F.3d at 1310 (quoting *Friends of the Earth*, 528 U.S. at 189). "The basis for the voluntary-cessation exception is the commonsense concern that a defendant might willingly change its behavior in the hope of avoiding a lawsuit but then, having done so, 'return[s] to [its] old ways." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1267 (11th Cir. 2020) (alteration added) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)).

The Eleventh Circuit has explained that "governmental entities and officials have . . . considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities." *Id.* (quoting *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 868 F.3d 1248, 1256 (11th Cir. 2017) (en banc), *abrogated on other grounds by Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021)). This is so because "government actors are more likely than private defendants 'to honor a professed commitment to changed ways.'" *Id.* at 1267–68 (quoting *Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1283 (11th Cir. 2004)). Thus, "'government actor[s enjoy] a rebuttable presumption that the objectionable behavior will *not* recur." *Nat'l Ass'n of Bds. of Pharmacy*, 633 F.3d at 1310 (quoting *Troiano*, 382 F.3d at 1283). Hence, "the Supreme Court has held almost uniformly that voluntary cessation [by a government defendant] moots the claim." *Id.* (quoting *Beta Upsilon Chi Upsilon Chapter v. Machen*, 586 F.3d 908, 917 (11th Cir. 2009)).

12

Further, the Eleventh Circuit has "consistently held that a challenge to [government conduct] that has been unambiguously terminated will be moot in the absence of some reasonable basis to believe that the [government conduct] will [resume] if the suit is terminated." *Id.* (quoting *Troiano*, 382 F.3d at 1285). Where an allegedly unlawful governmental policy or activity ceases such that it causes a court to question its jurisdiction, "the plaintiff bears the burden of presenting affirmative evidence that [her] challenge is no longer moot." *Keohane*, 952 F.3d at 1268 (quoting *Flanigan's*, 868 F.3d at 1256). The key inquiry to be resolved is "whether the plaintiff has shown a 'reasonable expectation' . . . [or] a 'substantial likelihood' . . . that the government defendant 'will reverse course and reenact' the repealed rule." *Id.* (alterations added) (quoting *Beta Upsilon Chi Upsilon Chapter*, 586 F.3d at 917). In resolving this inquiry, courts consider three broad factors:

> (1) "whether the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate [the court's] jurisdiction," i.e., by examining "the timing of the repeal, the procedures used in enacting it, and any explanations independent of this litigation which may have motivated it"; (2) "whether the government's decision to terminate the challenged conduct was 'unambiguous,'" i.e., "whether the actions that have been taken to allegedly moot the case reflect a rejection of the challenged conduct that is both permanent and complete"; and (3) "whether the government has consistently maintained its commitment to the new policy or legislative scheme."

*Schultz v. Alabama*, 42 F.4th 1298, 1321 (11th Cir. 2022) (quoting *Flanigan's*, 868 F.3d at 1257). Importantly, the Eleventh Circuit has cautioned that the above broad factors "should not be viewed as exclusive nor should any single factor be viewed as dispositive" and "in any event, 'a mootness finding should follow when the totality of [the] circumstances persuades the court that there is no reasonable expectation that the government entity will reenact' the challenged policy." *Keohane*, 952 F.3d at 1268 (quoting *Flanigan's*, 868 F.3d at 1257).

### 1. Defendants' Change In Policy Was Not Merely An Attempt To Manipulate Jurisdiction.

As discussed above, Defendants' termination of FFP's license to exhibit Lolita at Whale Stadium as an additional site under FFP's license was due to: FFP's sale of the Seaquarium to MS Leisure, followed by MS Leisure's decision not to exhibit Lolita, her tank, and the Pacific white-sided dolphin, and FFP's request that the Seaquarium be removed from its AWA license. Again, these facts are established through Dr. Goldentyer's Declaration. *See* [ECF No. 167-1], Goldentyer Decl. at ¶¶ 2–7. And Plaintiffs do not dispute that declaration, nor do they offer contrary evidence.

Furthermore, Plaintiffs' own proffered evidence, the March 2, 2022 letter from Dr. Goldentyer to MS Leisure, establishes that MS Leisure would have to apply for a new license in order to exhibit Lolita, her tank, and the Pacific white-sided dolphin. *See* [ECF No. 169-1, Ex. 1]. That letter provides, in relevant part:

> Because (1) MS Leisure has made the decision not to exhibit Lolita/Tokitae and the Pacific white-sided dolphin within the Whale Stadium, (2) the Whale Stadium is inaccessible to the public and the animals contained therein are not visible to the public, and (3) the animals in Whale Stadium are separate from, and will not be in contact with, the regulated animals at Miami Seaquarium, these animals (Lolita and her dolphin companion) are not covered by this USDA license. If, in the future, you intend to exhibit either of these animals (including posting any image of these animals on social media with the expectation of economic benefit), or resume using this pool for exhibition purposes, ***you will need to apply for a new license***.

*Id.* (emphasis added). In light of this uncontroverted evidence, the undersigned finds that Defendants' termination of the license to exhibit Lolita at Whale Stadium as an additional site under FFP's license was the result of Defendants' response to FFP's sale of the Seaquarium to MS Leisure, followed by MS Leisure's decision not to exhibit Lolita, her tank, and the Pacific white-sided dolphin, and FFP's request that the Seaquarium be removed from its AWA license, and not the result of actions set in motion by Defendants.

The undersigned additionally notes that this matter has been pending for over seven years; however, it was not until the actions of third parties FFP and MS Leisure in connection with the sale of the Seaquarium that Defendants filed the Motion now before the Court. Moreover, although they contend it is the case, Plaintiffs have not provided the Court with any evidence to suggest that the timing of Defendants' licensing decision is somehow indicative of an effort to manipulate the Court's jurisdiction.

Accordingly, the undersigned finds that Defendants' decision to terminate FFP's license to exhibit Lolita at the Seaquarium was not merely an attempt to manipulate jurisdiction.

### 2. Defendants' Decision To Terminate The Challenged Conduct Was Unambiguous.

Plaintiffs do not directly dispute that the allegedly unlawful conduct—Defendants' decision to license the Seaquarium as an additional site under FFP's license—has been unambiguously terminated. Instead, Plaintiffs attempt to sidestep this issue by arguing "the challenged conduct can be expected to recur, as [Defendants] will again be in a position to license Lolita's exhibition if MS Leisure should merely request it." Resp. at 4. This argument fails.

Implicit in this argument is a recognition on Plaintiffs' part that Defendants can no longer license Lolita's exhibition as an additional site under FFP's license. As Plaintiffs' argument admits, in order to license Lolita's exhibition in the future, MS Leisure would have to request a new license. It logically follows that the allegedly unlawful conduct—Defendants' licensing of the Seaquarium as an additional site under FFP's license (as opposed to licensing as a new site under MS Leisure's license)—has unambiguously terminated. Otherwise, there would not be a need for MS Leisure to request a new license before it could exhibit Lolita at

15

the Seaquarium. That is, the evidence establishes that MS Leisure will not be able to "piggyback" on Defendants' licensing of the Seaquarium as an additional site under FFP's license to exhibit Lolita, which is the focus of Plaintiffs' challenge. Notably, Plaintiffs have not presented the Court with any evidence that contradicts this conclusion.

There is therefore no ambiguity regarding whether the challenged conduct can recur in light of FFP's and non-party MS Leisure's actions. It is unambiguous that the challenged conduct, licensure of the Seaquarium as an additional site under FFP's license, cannot recur. Accordingly, the undersigned finds that Defendants unambiguously terminated their allegedly unlawful decision to license the "Lolita" exhibition at the Seaquarium as an additional site under FFP's license as a result of FFP's sale of the Seaquarium and non-party MS Leisure's notice indicating that it will no longer exhibit Lolita at the Seaquarium.

### 3. Defendants Have Consistently Maintained Their Commitment To The New Policy.

As previously mentioned, the March 2, 2022 letter from Dr. Goldentyer to MS Leisure establishes that MS Leisure would have to apply for a new license in order to exhibit Lolita, her tank, and the Pacific white-sided dolphin. *See* [ECF No. 169-1, Ex. 1]. This letter demonstrates that Lolita cannot be exhibited pursuant to FFP's exhibitor license. As previously mentioned, Dr. Goldentyer's Declaration establishes that Defendants removed the Seaquarium from FFP's license on March 8, 2022. [ECF No. 167-1], Goldentyer Decl. at ¶ 8. Thus, to date, Defendants have consistently maintained their commitment to the removal of the Seaquarium as an additional site from FFP's license. Plaintiffs have not provided the Court with any evidence demonstrating or even suggesting that Defendants have indicated that they will not maintain this commitment. Consequently, the undersigned is unable to

conclude that Defendants will not maintain their commitment to the removal of the Seaquarium as an additional site from FFP's license.

> **4. There Is No Reasonable Expectation That Defendants Will License The Seaquarium As An Additional Site Under FFP's License In The Future If This Case Is Dismissed.**

In sum, the undersigned finds that Plaintiffs have not presented the Court with any affirmative evidence showing a reasonable expectation or a substantial likelihood that Defendants will later license Lolita's exhibition as an additional site under FFP's license (should anyone request it) if this suit is terminated. In fact, the only evidence that Plaintiffs presented to the Court, the March 2, 2022 letter from Dr. Goldentyer to MS Leisure, supports the conclusion that Defendants' allegedly unlawful conduct has unambiguously ceased and will not resume should the Court dismiss this action. [ECF No. 169-1, Ex. 1]. Again, this letter unequivocally establishes that MS Leisure would have to apply for a new license in order to exhibit Lolita, her tank, and the Pacific white-sided dolphin at the Seaquarium. As such, the evidence that Plaintiffs provided to the Court demonstrates that Defendants could not just resume the allegedly unlawful conduct should the Court dismiss this action.

Therefore, the undersigned finds that the evidence demonstrates that even if Defendants were the parties that voluntarily ceased the allegedly unlawful conduct, Plaintiffs have not provided the Court with any basis to find a reasonable expectation that Defendants' allegedly unlawful conduct will resume if this suit is terminated. Absent such a showing, this case is moot, and this Court lacks standing to consider Plaintiffs' claims.

## IV. CONCLUSION

In the Complaint, Plaintiffs challenge Defendants' decision to license the Seaquarium as an additional site under FFP's license. *See* [ECF No. 1], Compl. at ¶¶ 68. As relief, Plaintiffs request that the Court declare that Defendants acted arbitrarily and capriciously in licensing

the Seaquarium as an additional site under FFP's license and set aside as unlawful such decision. *See id.* at p. 16, Req. for Relief ¶¶ (1)–(2). However, because of FFP's sale of the Seaquarium to MS Leisure, followed by MS Leisure's decision not to exhibit Lolita, her tank, and the Pacific white-sided dolphin, and FFP's request that the Seaquarium be removed from its AWA license, this case is no longer a live controversy with respect to which the Court can give meaningful relief. As such, dismissal of this action is warranted. *See O'Neal*, 825 F. App'x at 697 ("Because mootness is a jurisdictional requirement, a federal court must dismiss a moot case.").

Moreover, even if it were Defendants' actions that caused the allegedly unlawful activity to cease, Plaintiffs have not presented the Court with affirmative evidence showing a reasonable expectation or a substantial likelihood that Defendants will engage in the same allegedly unlawful conduct (*i.e.*, license Lolita's exhibition as an additional site under FFP's license) if this suit is terminated. Furthermore, such a conclusion is refuted by the evidence as demonstrated by Dr. Goldentyer's letter to MS Leisure indicating that, in the future, should MS Leisure intend to exhibit Lolita and the Pacific white-sided dolphin in Whale Stadium at the Seaquarium, MS Leisure would need to apply for a new license.

Therefore, based upon the totality of the circumstances, the undersigned finds that this case is moot because it no longer presents a live controversy with respect to which the Court can give meaningful relief.

## V. RECOMMENDATION

Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss Complaint as Moot [ECF No. 167] be **GRANTED** and that this case be **DISMISSED AS MOOT**.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 13th day of June, 2023.

MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
Hon. Darrin P. Gayles, *U.S. District Judge*
Counsel of Record